WALLACE (VAUGHAN v.). See Case No. 16,902.

WALLACE (WATERMAN v.). See Case No. 17,261.

---

## Case No. 17,104.

### WALLAMET FALLS C. & L. CO. v. KITTREDGE.

[10 Chi. Leg. News, 122; 5 Reporter, 425.] [2]

Circuit Court, D. Oregon. Dec. 17, 1877.

DISSOLUTION OF CORPORATION—WINDING UP BUSINESS.

1. Section 19 of the corporation act of Oregon (Laws, p. 538) empowers the majority of the stockholders to authorize the dissolution of the corporation, "and the settling of its business and disposition of its property and dividing of its capital stock, in any manner it may see proper." Held, that the authority to the directors to dissolve the corporation, carried with it the incidental power to collect and distribute its assets and wind up its affairs.

2. A vote of the directors declaring the corporation dissolved, only operates to prevent it from engaging in new business, but the corporation continues to exist, notwithstanding the declaration of dissolution, for the purpose of collecting and distributing its assets and winding up its affairs.

[This was an action by the Wallamet Falls Canal & Lock Company against Jonathan Kit-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [5 Reporter contains only a partial report.]

tredge to recover damages. Heard on demurrer to defendant's plea. See Case No. 17,105.]

William Strong, for plaintiff.
Charles B. Upton, for defendant.

DEADY, District Judge. The plaintiff alleges that the defendant is indebted to it upon a bond given by himself and others to secure the performance of a contract to build its locks and canal at the Falls of the Wallamet, in 1871. The defendant in his amended answer pleaded in abatement of the action that since the commencement thereof the plaintiff at a meeting of its stockholders duly "authorized the dissolution of said corporation without authorizing or providing for settling its business; the said corporation thereby ceased to exist." Upon demurrer to this defense it was held that a vote of the stockholders did not dissolve the corporation, but that the act of the dissolution must proceed from the directors; and the defendant had leave to amend. See [Case No. 17,105].

The amended plea alleges that the plaintiff by the act of its directors done in pursuance of a majority vote of its stockholders became and was duly dissolved and thereby ceased to exist without said vote "authorizing or providing for settling its business." The plaintiff demurs to the plea because the facts stated do not constitute a defense to the action. Section 19 of the corporation act of this state (Laws, p. 528) provides that any corporation organized under that act, "may at any meeting of the stockholders, * * * by a vote of the majority of the stock of such corporation * * * authorize the dissolution of such corporation and the settlement of its business, and disposing of its property and dividing of its capital stock in any manner it may see proper."

The plea does not conclude that by reason of the facts stated therein this debt became and is extinguished, but upon the argument of the demurrer it was maintained by counsel for the defendant that such was the legal effect of the transaction.

The argument for the plea is that the stockholders may vote to authorize the dissolution of a corporation without at the same time authorizing a settlement of its business. a disposition of its property or division of its capital stock; and, that in such case, if the corporation is dissolved by the directors in pursuance of such authority its debts are extinguished and its property escheats to the state or reverts to the grantors. At common law, upon the death or dissolution of a corporation its real property reverted to the donors, and its personal property escheated to the king, while the debts due to and from it were thereby extinguished and all actions pending for or against it at the time, abated. Ang. & A. Corp. §§ 179, 195.

This doctrine had its origin when corporations were either municipal or ecclesiastical and being dissolved for non-use or abuse of their powers, their real property, which was usually acquired as a donation to public or pious uses, was held to revert, upon the cessation of the use to the donors and their personal property to escheat to the king for want of owners. In these cases there were no stockholders or natural persons who were entitled, equitably or otherwise, to the assets of the deceased corporations, and as in the case of an individual dying without heirs, the personalty went to the king; but to prevent the realty from escheating to the king, it was held to revert to the donor upon the theory that the grant being made to the corporation for a public or pious use was made only for its life: Ang. & A. Corp. § 195. But this rule, so far as the modern business and commercial corporation is concerned, has become practically obsolete. Its unjust operation upon the rights of creditors and stockholders has been generally prevented by statute. And in equity the assets of such a corporation which represent not the donations of the prince or its pious founder, but the contributions of its stockholders are held, independent of statute to constitute a trust fund into whosesoever hands they may come for the benefit of creditors and stockholders: Curran v. Arkansas, 15 How. [56 U. S.] 311; Bacon v. Robertson, 18 How. [59 U. S.] 480; 2 Kent, Comm. 307. n. a; Ang. & A. Corp. § 779a.

Admitting, however, that in the absence of any statute provision to the contrary, the common law rule—that the civil death of a corporation extinguishes all debts due to or from it—still applies to actions at law, yet it being manifest that corporations like the plaintiff are not within the reason of the rule, and that the same has been generally superseded by legislation, the provisions of section 19, supra, ought to be so construed, if possible, as to keep the case out of the rut of what Chancellor Kent (supra) calls the now "obsolete and odious" rule of the common law and accomplish the manifest purpose of the legislature,—that is, to allow a corporation to terminate its existence and collect and distribute its assets in its own name, whenever and in any manner the stockholders may deem best.

Now this plea of the defendants does not allege that the act, resolution or proceeding of the directors dissolving this corporation did not provide for the collection of its assets, including this debt. But if it is assumed that unless the vote of the stockholders expressly authorized such collection as well as the dissolution, the directors could not provide for the former, although they might declare the dissolution. Upon this view of the matter, which seems to be based upon the idea that the dissolution, settlement of business, disposition of property and division of capital provided for in the statute, are distinct and independent subjects, the more reasonable conclusion seems to be that the stockholders cannot authorize a dissolution of the corporation unless they also expressly

authorize the settlement of its business. etc.

But I think the most reasonable and practical construction of the section is that the power to authorize the settlement, disposition and division mentioned is a mere amplification or unfolding of the power to authorize the dissolution, which has been inserted therein out of abundance of caution; and that the stockholders may authorize the directors to dissolve the corporation. and that by a necessary implication such authority gives them power to provide for the winding up of its affairs. The authority to dissolve the corporation implies the power to provide for the necessary consequences of such dissolution—the collection and distribution of its assets among its creditors and stockholders according to their respective rights. But the stockholders may, if they see proper, go farther and prescribe the mode of doing this, subject of course to the legal rights of such creditors and stockholders.

The rights of creditors are to be considered in this matter as well as those of the corporation or stockholders. A corporation may be largely in debt, and its stockholders may be liable to it for a like amount upon their subscriptions to the capital stock. The statute ought not to be construed so as to permit the stockholders to secure the dissolution of the corporation without the settlement of its business, and thereby extinguish this indebtedness, to the manifest wrong and injury of the creditors and their own unjust gain.

It is very doubtful whether a corporation can be dissolved outright under this section —at least, unless the scheme or declaration of dissolution provides completely and effectually for the full and just settlement of its affairs. The object of the section is to enable the stockholders of a corporation to bring its business to a close before the expiration of the time for which it was incorporated, without incurring the penalty or inconvenience of forfeiture for non-user. In the absence of any specific directions to the contrary, the dissolution takes effect at once only so far as to deprive the corporation of the power of engaging in new business; but for the purpose of completing unfinished business and winding up its affairs, it continues to exist as long as may be necessary, or until it expires by lapse of time, or is declared dissolved by the judgment of a competent court.

In conclusion, I think this plea bad: (1) Because it does not appear therefrom but that the directors upon providing for the dissolution of the corporation, also specifically provided for the prosecution of this action and the disposition of any judgment that might be obtained in it; and (2) because, even if it appeared that no special provision was made concerning this claim the corporation continues to exist, notwithstanding the declaration of dissolution for the purpose

of collecting and distributing its assets and winding up its affairs. The demurrer is sustained.